**THE LAW OFFICES OF LEON OZERAN**
Leon Ozeran, Esq., CA Bar No.: 296071
8200 Wilshire Blvd.
Beverly Hills, CA 90211
Tel: (310) 461-3730
Email: ozeranlaw@gmail.com

Attorneys for Plaintiff SAMAN KOHANOF

## UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMAN KOHANOF, individually, and on behalf of a class of similarly situated individuals,<br><br>                     Plaintiff,<br><br>     v.<br><br>PORSCHE CARS NORTH AMERICA, INC.,<br><br>                     Defendant. | Case No. 2:24-cv-03414<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Saman Kohanof ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint ("Complaint") against Defendant PORSCHE CARS NORTH AMERICA, INC. ("Defendant" or "Porsche").

## <u>INTRODUCTION</u>

1.      This is a class action lawsuit brought by Plaintiff on behalf of himself and a nationwide class of current and former purchasers or lessees of 2011 through 2018 Porsche Cayenne and Macan vehicles equipped (the "Class Vehicles" or "Vehicle(s)").

2.      At the time of sale or lease, the Class Vehicle contained a defect in design, material, manufacturing or workmanship which results in the transfer case

failing (the "Defect").  The Defect poses a safety risk to the driver and passenger(s) of the Class Vehicles and is unreasonably dangerous.

3.      Defendant knew that the Class Vehicles were defective and not fit for their intended purposes as a result of the Defect.  Nevertheless, Defendant actively concealed and failed to disclose this defect to Plaintiff and prospective class members at the time of purchase or lease of the Class Vehicles or at any time thereafter.

4.      Not only did Defendant actively conceal the fact that particular components within the Class Vehicles are defective (and require costly repairs to fix), but they did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Vehicles due to safety concerns.

5.      Defendant knew about the Defect yet, notwithstanding its longstanding knowledge of this defect, Defendant has routinely refused to repair or replace the transfer case.

## PARTIES

6.      Plaintiff is a citizen of California, residing in Los Angeles.

7.      Defendant Porsche Cars North America, Inc. is a corporation organized and in existence under the laws of the State of Georgia and registered with the California Department of Corporations to conduct business in California.  At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components throughout the United State of America, including in California.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs; and (iii) there is a minimal diversity because at least one plaintiff and one defendant are citizens of different

states.  This Court also has jurisdiction in that Plaintiff has asserted federal statutory warranty claims.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

9.    Defendant is in the business of, among other things, distributing, marketing, warranting and repairing automobiles and conducts regular and substantial business worldwide, including throughout the State of California, as well as the rest of the United States.

10.    Venue in the Central District of California is proper because:

    a.    Defendant regularly conducts business in California and enters its products into the stream of commerce in this district;

    b.    Defendant marketed and advertised in this district, and/or its marketing and advertising material was distributed, disseminated, or entered the borders of this district and was viewed, read, considered and relied upon by consumers and Plaintiff;

    c.    Defendant has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district;

    d.    Plaintiff is a citizen and resident of California; and

    e.    The Defect in Plaintiff's 2016 Porsche Cayenne occurred in Los Angeles County, California within this district.

11.    Plaintiff is a citizen of California and seeks to certify and represent a national class of owners and lessees of Class Vehicles, constituted of citizens of states different than that of one or more defendants and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

# FACTUAL BACKGROUND

***Plaintiff's Experience***

12.    In June 2015, Plaintiff ordered for purchase a new 2016 Porsche Cayenne for personal, family and/or household uses.  His vehicle bears the Vehicle Identification Number:  WP1AA2A21GLA11447 (the "Vehicle").  The Vehicle was delivered in the second half of 2015 or early 2016.

13.    Plaintiff relied on Defendant's advertisements that the Vehicles were high-performing, durable, reliable, and had longevity when making his purchase decision.  Had Plaintiff known that the Vehicle had or was likely to exhibit the Defect and that the advertising statements were false, he would not have purchased the Vehicle.

14.    In approximately late 2023, with less than 60,000 miles on the Vehicle's odometer, the Vehicle began to exhibit kicking, jerking, bouncing, clicking, and other transfer case-related issues.  Plaintiff took the Vehicle to a third-party dealership. The third-party dealer advised Plaintiff that Vehicle exhibits the transfer case Defect, and repair of the Defect would cost approximately $5,000.

15.    In early 2024, for the first time, Plaintiff learned that the Defect was widespread for the Class Vehicles, and that Defendant had issued an extended warranty to address the widespread and common Defect.[1]  The extended warranty for Plaintiff's Vehicle was for seven (7) years from date of delivery of the Vehicle, regardless of mileage.[2]  Defendant never provided notice of the extended warranty to Plaintiff, nor did Defendant create a campaign sufficient to notify Class members of the Defect and extended warranty.

16.    In January 2024, Plaintiff reached out to Defendant to demand that the repair be done under warranty.  Defendant refused.  Plaintiff requested to speak with

---

[1] https://www.porsche.com/taiwan/en/accessoriesandservice/porscheservice/vehicleinformation/warranty-cayenne-modelyear-2015-2018/
[2] https://www.pcarwise.com/news/porsche-extends-transfer-case-warranty/

a supervisor. Defendant's customer service representative stated they escalated Plaintiff's call to a supervisor and that Plaintiff should expect a call back. Months passed and no one ever called Plaintiff back.

17. As a result of the safety issues associated with the Defect, including but not limited to incorrect torque being applied to the driven wheels or oil leaking and contacting the tires, Plaintiff stopped using his Vehicle.

### Defendant's Knowledge of the Defect

18. Prior to 2015, Defendant knew of the Defect, but failed to advise Plaintiff or the Class members of the Defect.

19. Defendant began receiving complaints regarding the malfunctioning transfer case as early as 2004, even issuing a recall of the 2004 Porsche Cayenne vehicles.[3] Despite instituting the recall for the 2004 model, Defendant failed to remedy the design defect and continued to manufacture and sell the Class Vehicles with the Defect.

20. Alternatively, Defendant was aware of the Defect with the Class Vehicles as early as 2011, as numerous complaints were posted online by owners of the Vehicles related to the transfer case[4] and made directly to Defendant.[5] On information and belief, it is also believed that Defendant received copies of complaints related to the transfer case defect for the Class vehicles from the National Highway Traffic Safety Administration ("NHTSA"). Thus, numerous complaints about the Defect were received by the NHTSA prior to Plaintiff's purchase of his Vehicle and Defendant was aware of the nature of the Defect prior to Plaintiff's purchase.

---

[3] https://static.nhtsa.gov/odi/rcl/2004/RCDNN-04V071-1271.pdf
[4] https://www.copilotsearch.com/posts/which-year-models-of-porche-cayenne-to-avoid/#:~:text=With%20proper%20upkeep%20and%20TLC,least%20reliable%20midsize%20luxury%20SUV.
[5] https://www.6speedonline.com/forums/cayenne-958/287782-2011-cayenne-transfer-case-replaced.html

21.    In 2017, seemingly in response to the number of transfer case complaints made related to the Class Vehicles, Defendant provided new guidance on the transfer case oil to be used for the Class Vehicles, changing from 000-043-301-36 OEM to 000-043-305-63 OEM.  This, however, failed to remedy the Defect, only further masking it's manifestation.

22.    Plaintiff has suffered an ascertainable loss as a result of the Defect including, but not limited to the labor and materials to replace the transfer case and related elements in the Vehicle; the loss of use of his Vehicle; and the depreciation to his Vehicle caused by the Defect.

23.    Defendant created and/or approved the specifications for the transfer case in the Class Vehicles and, to the extent that it did not manufacture certain components of the system, it approved the design, and manufacturing standards and practices, for the components of the transfer case system, and tested the Class Vehicles.

24.    As designed, the transfer case is prone to failure.

25.    This failure could be easily be limited by the installation of a different transfer case.  Prior to installing the transfer case in the Class Vehicles, Defendant was aware of the option of installing a different transfer case, but chose not to do so.

26.    Based on the design of the transfer case, Defendant had knowledge prior to the time that the Class Vehicles were first brought to market that they were susceptible to failure and harming the Class members.

27.    Upon information and belief, Defendant developed the owner's manuals, warranty booklets and service manuals for all of the Class Vehicles.

***Defendant's Sham Warranty Extension***

28.    In Fall of 2020, Defendant issued an extended warranty for the Class Vehicles.  Defendant, however, denied that the Defect, further masking it.

29.    Defendant also failed to inform a significant number of Class members of the extended warranty; only informing some Class members of the extended

warranty by mail or email. Defendant intentionally failed to notify the Class members of the extended warranty so that fewer Class members could utilize the warranty.

30.     Furthermore, despite having knowledge that the Defect would eventually manifest in nearly all Class Vehicles, Defendant limited the extended warranty to a short period of time, rather than based on mileage. Further intentionally and maliciously limiting availability of the warranty coverage, despite knowing each Class Vehicles would experience the Defect.

31.     Moreover, Class members who had the transfer case in their Class Vehicles replaced under the warranty, experienced repeat transfer case failures. Additional transfer case repairs outside the extended warranty period were denied.

32.     In short, the extended warranty was not widely advertised, was based on years rather than usage despite Defendant being aware that the Defect manifested with use, and did not resolve the Defect and repaired Vehicles continued to exhibit the same Defect. The extended warranty was therefore a sham.

## TOLLING OF THE STATUTE OF LIMITATIONS

33.     As of the date of this Complaint, Defendant continues to market the Class Vehicles based on superior durability and performance, despite its knowledge that the Class Vehicles are defective and have catastrophically failed or inevitably will catastrophically fail. In fact, Defendant still has not disclosed and continues to conceal that the Class Vehicles are defective and will experience costly progressive and/or catastrophic failure.

34.     Until shortly before the filing of the Complaint, Plaintiff and Class members had no way of knowing about Defendant's wrongful and deceptive conduct with respect to the defective Class Vehicles.

35.     With respect to Class Vehicles that have not experienced the transfer case failure, Class members did not discover and could not reasonably have discovered prior to purchase that their Class Vehicles are defective, that the durability

and performance of their Class Vehicles is impaired by this Defect and that such durability and performance is far less than Defendant promised, or that, as a result of the foregoing, they overpaid for their vehicles, the value of their vehicles is diminished, and/or their vehicles will require costly modification to avoid a catastrophic, even more costly failure, and that any such modifications will impair other qualities of the Class Vehicles that formed a material part of the bargain between the parties in the purchase of the Class Vehicles by Class members.

36.    With respect to Class Vehicles that have experienced a transfer case failure prior to the filing of this Complaint, Class members did not discover and could not reasonably have discovered that their transfer case failure was due to a defect known to Defendant.

37.    Within the period of any applicable statutes of limitation or repose, Plaintiff and Class members could not have discovered through the exercise of reasonable diligence that Defendant was concealing the conduct complained of herein and misrepresenting the defective nature of the Class Vehicles.

38.    Plaintiff did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendant did not report information within their knowledge to consumers, dealerships or relevant authorities; nor would a reasonable and diligent investigation have disclosed that Defendant were aware of the non-conforming and defective nature of the transfer case and the Class Vehicles in which it was incorporated.  Plaintiff only learned of the defective nature of the transfer case in his Vehicle and of Defendant's decision to design and sell such unfit defective vehicles shortly before this action was filed.

39.    All applicable statutes of limitation and repose have also been tolled by Defendant's knowing, active, and fraudulent concealment, and denial of the facts alleged herein throughout the time period relevant to this action.

40.    Instead of disclosing the defective nature of the transfer case to consumers, Defendant have falsely represented that transfer case failure in the Class Vehicles is caused by Plaintiff' and Class members' conduct.

41.    Defendant fraudulently concealed the true cause of transfer case failure by blaming Plaintiff and Class members and/or other causes when Defendant, even before the design, manufacture, or sale of the Class Vehicles, knew that the defective nature of the Class Vehicles.

42.    Defendant was under a continuous duty to disclose to Class members the true character, quality and nature of the durability and performance of Class Vehicles and the true cause of transfer case failure.  Instead, Defendant knowingly, affirmatively, and actively concealed or recklessly disregarded the foregoing facts. As a result, Defendant is estopped from relying on any statute of limitation or repose as a defense in this action.

43.    While Defendant issued an extended warranty for the Class Vehicles in Fall of 2021, Defendant did so with limited or no notification of the extended warranty to Vehicle owners and lessees.  Where Defendant did reach out to Vehicle owners and leases, Defendant vaguely mentioned that "on certain model year Porsche Cayenne and Macan vehicles, the transfer case long term durability may be below Porsche's high quality standards."  Defendant thereby continued to conceal the Defect from Class members, failing to apprise Class members that their Vehicles were defective.

44.    For the foregoing reasons, all applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by Defendant's fraudulent concealment with respect to all claims against Defendant; and, Defendant is estopped from asserting any such defenses in this action.

**CLASS ACTION ALLEGATIONS**

45.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and on behalf of all members of the following putative Classes:

    a.    **Nationwide Class:**  All persons or entities who purchased or leased one or more of the "Class Vehicles" in the United States of America.

    b.    **California Class**: All persons or entities who purchased or leased one or more of the "Class Vehicles" in the State of California

46.    Excluded from the Classes are Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Defendant has a controlling interest.  In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Classes.  Plaintiff reserves the right to revise the Class definitions based upon information learned through discovery.

47.    **Numerosity.**  The members of the Class and Sub-Classes (collectively, "Class" or "Classes") number in the thousands.  As a result, joinder of individual plaintiffs is impracticable.  The disposition of Plaintiff's claims will provide a substantial benefit to the persons and the court system by using Rule 23 as the vehicle to adjudicate the rights of hundreds or thousands of individuals in one cause of action. Joining and naming each Class member as a co-plaintiff is unreasonable and impracticable.

48.    **Commonality and Predominance.**  Questions of law or fact common to members of the Classes exist that predominate over questions of law or fact affecting only individual members.  The questions of law or fact common to all members include, but are not limited to:

a.    Whether Defendant's misleading and deceptive business practice as alleged herein is an unlawful, unfair or fraudulent business practice under the UCL;

b.    Whether Defendant's misleading and deceptive business practice as alleged herein violated sections (a)(2), (a)(3), (a)(5), (a)(7), and (a)(14) of the CLRA;

c.    Whether Defendant's misleading and deceptive business practice as alleged herein fraudulently induced Plaintiff and the Class to purchase the Class Vehicles;

d.    Whether Defendant breached written or implied warranties by marketing and selling the Class Vehicles, as well as by failing and refusing to pay for transfer case replacement and repair of any damage caused by the Defect.

e.    Whether Defendant breached written or implied warranties or otherwise violated applicable law by failing and refusing to repair the Defect in the Class Vehicles;

f.    Whether Defendant is obligated to pay damages to and afford relief to Plaintiff and Class members as a result of the conduct described in this Complaint; and

g.    Whether Plaintiff and the Class purchased or leased a Class Vehicle;

h.    Whether the Porsche vehicle purchased or leased by Plaintiff and the Class has a transfer case;

i.    Whether the Porsche vehicle purchased or leased by Plaintiff and the Class was subject to the extended warranty;

j.    Whether Plaintiff and the Class are entitled to restitution of all money obtained by Defendant through its common and uniform scheme;

k.   Whether Plaintiff and the Class are entitled to prospective injunctive relief enjoining Defendant from continuing to engage in the deceptive, unlawful, and unfair business practices alleged herein;

l.   Whether Plaintiff and the Class are entitled to declaratory relief holding Defendant's business practices alleged herein are unlawful;

m.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles members of the putative Class.

49.   **Typicality.**   The claims by Plaintiff are substantially similar to the claims of the entire Class and are typical of the claims of the Class.

50.   **Adequacy of Representation.**   Plaintiff will fairly and adequately represent the interests of the Class.  The interests of the Class are not antagonistic with the interests of the individual Plaintiff.  Plaintiff has the ability to assist and adequately protect the rights of the Class during the litigation.  Further, Plaintiff is represented by legal counsel who is competent and experienced in products liability cases and in complex litigation, including class action litigation.

51.   **Superiority.**  The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

a.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class;

b.   The action is manageable as a class action because notice of the pendency of the action can readily be furnished to all prospective members of the Class since Defendant has ready access to contact information for its customers;

  c. In view of the complexity of the issues and the expense of litigation, the separate claims of the individual Class members are insufficient in amount to support the prosecution of separate actions because such members would lack the economic incentive to prosecute such actions; and

  d. The Class members have a common and undivided interest to ensure that owners and lessees of Class Vehicles do not drive in unsafe Vehicles for themselves or their family

**<u>COUNT ONE</u>**

**FRAUDULENT CONCEALMENT / FRAUD BY OMISSION**

**(COMMON LAW)**

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

52. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

53. Plaintiff brings this Count against Defendant on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the California Class.

54. As set forth herein, Plaintiff and Class members have suffered from a Defect that existed in the Class Vehicles upon first use.

55. Defendant intentionally concealed and suppressed material facts concerning the quality, durability, and performance of the Class Vehicles to defraud and mislead the Class members about the true nature of the Class Vehicles and reap the financial benefits of that deception.

56. Defendant knew from the moment the Class Vehicles were introduced that the transfer case in the Class Vehicles was unreasonably fragile and defective but did not disclose this information to Plaintiff or Class members.

57. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, Defendant knew that the transfer case was prone to quickly and

catastrophically fail in the Class Vehicles, and that such failure would require repair and replacement of the transfer case and related components.

58.    Despite this knowledge, Defendant marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, and nowhere therein was the defective nature of the transfer case disclosed to Plaintiff and Class members.   Instead, Defendant touted the Class Vehicles' superiority, performance, reliability, safety, and longevity, while concealing the fact that the transfer case in the Class Vehicles is not fit for use and is prone to catastrophic failure.

59.    The foregoing omitted facts and misrepresentations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiff and Class members, as those facts directly impacted the decision regarding whether Plaintiff and Class members would purchase or lease a Class Vehicle, and because they induced and were intended to induce Plaintiff and Class members to purchase or lease a Class Vehicle.   Longevity, durability, reliability, performance, and safety are material concerns to reasonable consumers such as Plaintiff and Class members.  Defendant represented to Plaintiff and Class Members that they were purchasing or leasing vehicles that were reliable, long-lasting, safe, and durable, when in fact the Class Vehicles were a ticking time-bomb, wherein the transfer case and component wear began immediately.

60.    Plaintiff and Class members did not know of the Defect in their Class Vehicles and could not have discovered it through reasonably diligent investigation. Indeed, the Defect was inherently undiscoverable, as the location of the transfer case and its specialized technology would make it undiscoverable to the average consumer despite any due diligence.

61.    Due to their specific and superior knowledge that the transfer case in the Class Vehicles will fail, and due to their false representations regarding the durability, reliability, and safety of the Class Vehicles, and due to their partial and inadequate

disclosures of the Class Vehicles' defective nature, Defendant had a duty to disclose to Class members that their vehicles' transfer case would fail, that Class Vehicles do not have the expected durability, that catastrophic failure of the transfer case would damage the Class Vehicle, and that Class members would be required to bear the cost of the damage to their vehicles.

62.    Defendant had a duty to disclose the Defect to Plaintiff and Class members because: (1) Defendant made disclosures about the Class Vehicles without revealing their true defective nature for the purpose of inducing Class members to purchase the Class Vehicles; (2) Defendant made earlier representations that were misleading or untrue; and (3) Defendant made partial disclosures that conveyed a false impression about the Class Vehicles.  Defendant had a duty to disclose the full truth about the defective nature of the transfer case installed in the Class Vehicles and their heightened fragility but did not.

63.    Defendant knew that Class members would and did rely upon Defendant's fraudulent omissions and misrepresentations.

64.    Defendant's scheme to design, market, and sell the Class Vehicles and tout the superiority of the Class Vehicles while knowing of the transfer cases' inherently unreasonable fragility reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Class members and the public regarding the durability and performance of the Class Vehicles.

65.    Had Class members known that the Class Vehicles did not have durability or that the Class Vehicles will fail when used as intended, Class members would not have purchased or leased a Class Vehicle, or would have paid substantially less for their Class Vehicles.  Class members relied upon the misrepresentations and omissions of Defendant in purchasing or leasing the defective Class Vehicles, to their detriment.

66.    Because of Defendant's misrepresentations and omissions, Class members have sustained concrete damages because they purchased vehicles that are

worth less than they bargained for.    As a result of Defendant's fraudulent concealment of the Defect, they did not receive the benefit of their bargain.

67.    Defendant's failure to disclose the unreasonably fragile nature of the transfer case results in damages to the Class members, including but not limited to the cost of repair or replacement of the transfer case, the cost of damage caused to the Class Vehicles by a catastrophic failure of the transfer case, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages, the purchase price of the vehicle, and other damages.

68.    Defendant still has not made full and adequate disclosures about the Class Vehicles to this day, and continues to defraud Class members by concealing material information about the defective nature of the transfer case in the Class Vehicles.

69.    Accordingly, Defendant is liable to the Class for damages in an amount to be proven at trial.

70.    Defendant's acts were done wantonly, maliciously oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and the misrepresentations and omissions made by Defendant to them were made in order to enrich Defendant.    Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT TWO

## VIOLATIONS OF CAL. CIV. CODE §§ 1750-1785 ("CLRA")

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

59.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

60.    The Consumer Legal Remedies Act creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business

practices.  *See Reveles v. Toyota by the Bay* (1997), 57 Cal.App.4th 1139, 1164.  Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.  Cal. Civ. Code § 1760.  The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes.

61.   Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Class Vehicles at issue for personal, family, or household purposes.

62.   Defendant is a "person" under Cal. Civ. Code § 1761(c).

63.   Plaintiff and Defendant, and the other Class members and Defendant, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

64.   The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

65.   Defendant misrepresented material facts and failed to reveal material facts which were known to it with respect to the Defect in the Class Vehicles and its component parts, materials, and systems.

66.   More specifically, Defendant made misrepresentations of material facts to customers who bought, drove, or used the Class Vehicles with respect to the safety, longevity, reliability, and durability of the Class Vehicles, which includes the transfer case.

67.   Plaintiff and Class members relied on the representations made by Defendant concerning the safety, reliability, longevity, and durability of the Class Vehicles when making the decision to purchase or lease the Class Vehicles.

68.   Defendant engaged in deceptive trade practices in its marketing, advertising and selling of the Class Vehicles by using false or misleading press

releases, literature, and promotional, marketing and advertising materials, as well as other statements, regarding the purported safety, durability, reliability, and longevity of the Class Vehicles.

69.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the transfer case in the Class Vehicles is defective such that the normal use of the Class Vehicles causes metal shards to wear off and disperse throughout the Vehicles' transfer case system, leading to certain component wear and potential catastrophic failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to use the vehicle). Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

70.    In purchasing or leasing the Class Vehicles, Plaintiff and the Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of and disperse throughout the Vehicles' system, leading to certain component wear and potential catastrophic failure.

71.    Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' transfer case system is a deeply internal component part in the Class Vehicles and Plaintiff and Class members were not aware of the defective nature of the transfer case prior to purchase or lease.

72.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

73.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

74.     Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and Class members.

75.     Defendant knew or should have known that its conduct violated the California CLRA.

76.     Defendant owed Plaintiff and Class members a duty to disclose the truth about the defective nature of the transfer case in the Class Vehicles because Defendants:

        a.     Possessed exclusive knowledge of the design of the Class Vehicles, including the uptick in warranty claims upon the introduction of the transfer case into the Class Vehicles;

        b.     Intentionally concealed the foregoing from Plaintiff and Class members; and/or

        c.     Made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from Plaintiff and Class members that contradicted these representations.

77.     Due to Defendant's specific and superior knowledge that the transfer case in the Class Vehicles will fail after a period of use, Defendant's false representations regarding the durability of the Class Vehicles, and Plaintiff's and Class members' reliance on these material representations, Defendants had a duty to disclose to Plaintiff and Class members that the transfer case will fail in Class Vehicles, that Class Vehicles do not have the expected durability, that failure of the transfer case will cause damage to Class Vehicles, and that Plaintiff and Class members would be required to bear the cost of the damage to their vehicles.  Having volunteered to provide information to Plaintiff and Class members, Defendants had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and Class members. Longevity, durability,

performance, and safety are material concerns to consumers.  Defendant represented to Plaintiff and Class members that they were purchasing or leasing vehicles that were of a high quality and particular standard, when in fact the transfer case in the Class Vehicles creates a ticking time bomb, wherein disintegration and component wear begins at the first use.

78.    Defendant's conduct proximately caused injuries to Plaintiff and Class members.

79.    Plaintiff and Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

80.    The transfer case defect involves a safety defect which presents an actual and/or imminent risk to vehicle occupant safety; specifically, the risk of a moving stall, which is a known consequence of the transfer case defect.  Defendant's unlawful acts and practices complained of herein affect the public interest.

81.    Under Cal. Civ. Code § 1780(a), Plaintiff and Class members seek monetary relief against Defendant for the harm caused by Defendant's violations of the CLRA as alleged herein.

82.    Plaintiff and Class members also seek punitive damages against Defendant because its unlawful conduct constitutes malice, oppression, and fraud under Cal. Civ. Code § 3294.

83.    Plaintiff and Class members seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, costs of court, and attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under CLRA.

84.    On March 4, 2024, Plaintiff sent a letter to Defendant via certified mail that provided notice of Defendant's CLRA violations and demanded that within thirty

(30) days from that date, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages and other available relief in accordance with the CLRA's provisions.  In response, Defendant did not comply with Plaintiff's demands in the CLRA letter, and to date has not so complied. Plaintiff and other Class members have suffered substantial economic injury by virtue of buying products that they would not have purchased absent Defendant's unlawful conduct, or by virtue of paying an excessive premium price they would not have paid absent Defendant's unlawful conduct.

<u>COUNT THREE</u>

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

85.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

86.    California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

87.    In the course of Defendant's business, they willfully failed to disclose and actively concealed that the transfer case in the Class Vehicles is particularly fragile such that the normal use of the Class Vehicles causes metal shards to wear off of the transfer case and disperse throughout the system, leading to certain component wear and potential catastrophic failure

88.    Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be durable.  Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive

acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

89.    In purchasing or leasing the Class Vehicles, Plaintiff and Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles would lead to certain component wear and potential catastrophic failure.

90.    Plaintiff and Class members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' transfer case systems are a deeply internal component part in the Class Vehicles and Plaintiff and Class members were not aware of the defective nature of the transfer case prior to purchase or lease.

91.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

92.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

93.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and Class members.

94.    Defendant knew or should have known that its conduct violated the California UCL.

95.    Defendant owed Plaintiff and Class members a duty to disclose the truth about the fragility of the transfer case in the Class Vehicles because Defendant:

      a.    Possessed exclusive knowledge of the design of the Class Vehicles, including the uptick in warranty claims related to the transfer case in the Class Vehicles;

     b.    Intentionally concealed the foregoing from Plaintiff and Class members; and/or,

     c.    Made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from Plaintiff and Class members that contradicted these representations.

96.    Due to their specific and superior knowledge that the transfer case n the Class Vehicles will fail, Defendant's false representations regarding the durability of the Class Vehicles, and Plaintiff's and Class members' reliance on these material representations, Defendant had a duty to disclose to Plaintiff and Class members that the transfer case will fail in Class Vehicles, that Class Vehicles do not have the expected durability, that failure of the transfer case will cause damage to Class Vehicle, and that Plaintiff and Class members would be required to bear the cost of the damage to their vehicles.  Having volunteered to provide information to Plaintiff and Class members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and Class members.  Longevity, durability, performance, and safety are material concerns to consumers.  Defendant represented to Plaintiff and Class members that they were purchasing or leasing vehicles that were durable, and would perform as intended, when in fact the Class Vehicles are a ticking time bomb.

97.    Defendant's conduct proximately caused injuries to Plaintiff and Class members.

98.    Plaintiff and Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a

diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

99.    The Defect involves a safety defect which presents an actual and/or imminent risk to vehicle occupant safety; specifically, the risk of a moving stall.

100.    Defendant's unlawful acts and practices complained of herein affect the public interest.  Put simply, defective cars are just not worth as much.

101.    Further, even without a safety issue, Plaintiff and Class members overpaid at the point of sale as the Class Vehicles have impaired performance due to the defect.

102.    Plaintiff and the Class seek monetary relief against Defendant in an amount to be determined at trial.  Plaintiff and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind. Indeed, Defendant carried out such conduct with willful and conscious disregard of the rights of others.  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages

103.    Plaintiff and the Class also seek attorneys' fees and any other just and proper relief available.

## COUNT FOUR

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (CAL. CIV. CODE § 1791, ET SEQ.)

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

104.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

105.    The Class Vehicles are "consumer goods" and Plaintiff and the Class members are "buyers" within the meaning of Cal. Civ. Code § 1791.  Defendant is also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

106.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

107.   The Class Vehicles would not pass without objection in the automotive trade because of the Defect, which also makes them unfit for the ordinary purpose for which a Class Vehicle would be used.

108.   The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and risk of stalling and does not advise Plaintiff and the Class members of the existence of the issue prior to experiencing failure firsthand.

109.   Defendant's actions have deprived Plaintiff and Class members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and other Class members paid.

110.   As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and Class members received goods whose condition substantially impairs their value.   Plaintiff and Class members have been damaged by the diminished value of their Class Vehicles.

111.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and Class members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles or the overpayment or diminution in value of their Class Vehicles.   They are also entitled to all incidental and consequential damages resulting from Defendant's breach, as well as reasonable attorneys' fees and costs.

112.   In January 2024 and on March 4, 2024, Plaintiff provided notice to Defendant in accordance with Cal. Civ. Code §§ 1790 et seq.   As of the time of this filing, Defendants have failed to rectify the qualms detailed in the aforementioned letters, which are the subject of this Complaint.

## COUNT FIVE

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (CAL. COM. CODE §§ 2314 AND 10212)

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

113. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

114. As set forth above, Plaintiff and Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles upon the first use of the Class Vehicles. Plaintiff and Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

115. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used. Such fitness is shown if the product is in safe condition and substantially free from defects." *Isip v. Mercedes-Benz, USA, LLC,* 155 Cal. App. 4th 19, 26 (2007); *see also Mexia v. Rinker Coat Co., Inc.,* 174 Cal. App. 4th 1291 (2009). Thus, "where a car can provide safe, reliable transportation, it is generally considered merchantable." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291 (1995). As demonstrated herein, the Class Vehicles are not substantially free from defects; the Class Vehicles contain an existing, manifested defect which can destroy the engines and other components and which renders the Class Vehicles unreliable.

116. Defendant is and was at all times a "merchant" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

117. With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

118. The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

119. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

120. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles had a defective transfer case in that use of the Vehicles causes a breakdown of the transfer case (a condition that Defendant knew would occur prior to their design and sale of the Class Vehicles), resulting in failure of components in the Class Vehicle, and, often, catastrophic failure of the transfer case.

121. It was reasonable to expect that Plaintiff and Class members may use, consume, or be affected by the defective vehicles, regardless of contractual privity with Defendant.

122. The Class Vehicles contained an inherent defect that was substantially certain to result in malfunction during the useful life of the product.

123. Plaintiff and Class members were and are third-party beneficiaries to the Defendant's contracts with Porsche-certified/authorized retailers who sold the Class Vehicles to Plaintiff.

124. In addition, or in the alternative, Plaintiff and Class members directly relied upon Defendant's advertising, as alleged above.

125. Defendant was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Class Vehicles, by letters from Plaintiff's counsel, on behalf of Plaintiff, to Defendant; complaints by Plaintiff or Class members to Defendant either orally or in writing;

complaints to Porsche dealerships; intermediate sellers; or repair facilities either orally or in writing; presentation of the Vehicles for repair to dealerships or to intermediate sellers or repair facilities; countless consumer complaints regarding the Defect; and/or by the allegations contained in this Complaint.

126.  As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class members have been damaged in an amount to be proven at trial.

## COUNT SIX

## BREACH OF EXPRESS OR WRITTEN WARRANTY

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

127.  Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

128.  Plaintiff seeks to recover for Defendant's breach of express warranty under the laws of the State of California.

129.  Defendant warranted all of the Class Vehicles against defects in material or workmanship at a time when it knew that the Class Vehicles suffered from a serious defect and, nevertheless, continued to market and sell the Class Vehicles with this express warranty.

130.  Defendant is obligated under the terms of its express warranty to repair and/or replace the defective Class Vehicles sold to Plaintiff and the Class.

131.  Defendant has breached its express warranties, as set forth above, by supplying the Class Vehicles in a condition which does not meet the warranty obligations undertaken by Defendant and by failing to repair or replace the defect in and/or defective parts in the Class Vehicles, or to replace the Class Vehicles themselves.

132.  Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendant's knowledge, Defendant

refuses to honor its warranty, even though it knows of the inherent defect in the Class Vehicles.

133. In addition, Defendant has received numerous complaints and other notices from its customers nationwide advising it of the Defect.

134. Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

135. Defendant has failed to provide to Plaintiff or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that Defendant expressly warranted when it sold the Class Vehicles to Plaintiff and members of the Class.

136. As a result of Defendant's breach of warranty, Plaintiff and the members of the Class have suffered damages in an amount to be determined at trial.

<u>COUNT SEVEN</u>

**VIOLATIONS OF MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312)**

**WRITTEN WARRANTY**

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

137. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

138. Defendant's Class Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

139. Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

140. Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

141. Defendant provided Plaintiff and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

COMPLAINT

142.   Defendant's written warranties provided to Plaintiff and all Class members were identical in all material respects.

143.   Defendant warranted all of the Vehicles against defects in material or workmanship at a time when it knew that these Class Vehicles suffered from a serious defect and, nevertheless, continued to market and sell the Class Vehicles with this express written warranty.

144.   Defendant is obligated under the terms of its written warranty to repair and/or replace the defective Class Vehicles sold to Plaintiff and the Class members.

145.   Defendant has breached its written warranty, as set forth above, by supplying the Class Vehicles in a condition which does not meet the warranty obligations undertaken by Defendant, and by failing to repair or replace the defect and/or defective parts inherent in the Class Vehicles.

146.   As set forth above, Defendant's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Class cannot and should not be limited to the remedies set forth in Defendant's written warranty and, instead, should be permitted to recover other appropriate relief, including damages and injunctive relief.

147.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff.  Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and Class members, and Defendant knew that the Class Vehicles were defective at the time of sale.

148.   Defendant has received sufficient and timely notice of the breaches of warranty alleged herein, including by letter dated March 4, 2024.  Despite this notice and Defendant's knowledge of the Defect in the Class Vehicles, Defendant has failed and refuses to honor its warranty, even though it knows of the inherent defect in the Class Vehicles.

149.   Defendant has received numerous complaints and other notices from its customers nationwide, advising it of the Defect in the Class Vehicles.

150.   Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranty, and Defendant has failed to do so.

151.   Defendant has failed to provide to Plaintiff or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that Defendant expressly warranted when it sold the Class Vehicles to Plaintiff and members of the Class.

152.   Despite repeated demands by Plaintiff and members of the Class to Defendant and the authorized dealers and dealerships to which warranty claims are required to be submitted under the terms of the written warranty, Defendant has failed and refused to repair and replace the Class Vehicles in accordance with the terms of its written warranty.

153.   In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the express warranties in a manner that would exclude coverage of the defective Vehicles is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Vehicles is null and void.

154.   The regulations of the Federal Trade Commission ("FTC") specifically provide as follows with respect to a product that is warranted:   "A seller or manufacturer should advertise that a product is warranted or guaranteed only if the seller or manufacturer, as the case may be, ***promptly and fully performs its obligations under the warranty or guarantee***."   16 C.F.R. § 239.5 (emphasis added).

155.   Here, by warranting or guaranteeing a product for which it was unable (or unwilling) to promptly and fully perform its obligations under the warranty or guarantee, as discussed more fully below, Defendant engaged in false, deceptive and misleading advertising, marketing and representations, in violation of the FTC's regulations and guidance.

156.    By Defendant's conduct as described herein, including its knowledge of the defective Class Vehicles and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written promises, warranties and representations.

157.    As a result of Defendant's breach of express written warranties, Plaintiff and the members of the Class are entitled to revoke their acceptance of the Vehicles, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## COUNT EIGHT

## VIOLATIONS OF MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312)

## IMPLIED WARRANTY

## (On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)

158.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

159.    This cause of action is brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312.

160.    The Class Vehicles are "consumer products" as defined by 15 U.S.C. § 2301(1).

161.    At all relevant times, Plaintiff and Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

162.    At all relevant times, Defendant is a "supplier" as defined by 15 U.S.C. § 2301(4).

163.    At all relevant times, Defendant is a "warrantor" as defined by 15 U.S.C. §2301(5).

164.    Defendant provided Plaintiff and Class members with "implied warranties" as defined by 15 U.S.C. § 2301(7).

165.   Defendant impliedly warranted that the Class Vehicles were (and are) merchantable.

166.   Defendant breached the implied warranty of merchantability, as the Class Vehicles were not merchantable due to the Defect, and the associated problems caused by this serious defect.

167.   As a direct and proximate result of the breach of said warranties, Plaintiff suffered harm and is entitled to damages.

168.   In its capacity as a supplier and warrantor, and by the conduct described herein, any attempt by Defendant to limit its implied warranty in a manner that would exclude coverage of the Class Vehicles is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Class Vehicles is void.

169.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff.  Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and Class members, and Defendant knew that the Class Vehicles were (and are) defective at the time of sale.

170.   Plaintiff has complied with all obligations under the warranty, or otherwise has been excused from performance of said obligations as a result of Defendant' conduct described herein.

171.   Plaintiff has provided sufficient and timely notice to Defendant regarding the problems he has experienced with the Vehicle, has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and, notwithstanding such notice and reasonable opportunity for cure, Defendant has failed to cure the defective Vehicle.

172.   Plaintiff and the Class members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty of merchantability.

173.   As a result of Defendant's breach of implied warranty, Plaintiff and Class members are entitled to revoke their acceptance, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## COUNT NINE

## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT (CIVIL CODE SECTIONS 1790 ET SEQ.)

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

174.   Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

175.   Pursuant to the Song-Beverly Consumer Warranty Act at Civil Code § 1790, et seq., the Class Vehicle constitutes "consumer goods" purchased or leased primarily for family or household purposes, and Plaintiff has used his Vehicle primarily for those purposes.

176.   At the time of sale or lease, the Vehicle suffered from significant defects and non-conformities as described above which arose during the implied and express warranty duration periods, including those which impaired safe operation of the Vehicle and those which rendered the Vehicle unmerchantable and/or unfit. The Vehicle would not pass without objection in the trade under the contract description and is not fit for the ordinary purposes for which such a vehicle is used.

177.   Defendant failed to repair the Vehicle to conform to the express warranty after a reasonable number of repair opportunities. Moreover, this failure by Defendant was "willful" as that term is specially defined at law, and Defendant's unreasonable failure to repurchase the Vehicle is likewise "willful."

178.   Plaintiff files this action within four years of Plaintiff's discovery that the Vehicle was unmerchantable and/or unfit at purchase, and within four years of Plaintiff's inability to obtain repairs under warranty.

179.    Plaintiff elects and demands reimbursement plus the recovery permitted by Commercial Code Sections 2711, 2712 and 2713, including inspection and transportation costs, plus attorney's fees and other litigation costs, pursuant to Civil Code Section 1794(b) for implied-warranty violations.    Plaintiff also elects and demands a repurchase of the Vehicle including the restitution of all monies paid for the Vehicle (down payment, monthly payments, finance charges, taxes, registration, and other incidental and consequential expenses), plus reimbursement, plus additional forms of recovery permitted by Commercial Code Sections 2711, 2712 and 2713, including inspection and transportation costs, plus civil penalties and the maximum rate for "willful" failure to comply, attorney's fees and other litigation costs, pursuant to Civil Code Sections l793.2(d) and Section 1794 for express-warranty violations.    Plaintiff also elects and demands rescission of the Purchase Agreement.

## <u>COUNT TEN</u>

### STRICT LIABILITY

**(On Behalf of Plaintiff, a Nationwide Class, and Alternatively, the California Sub-Class)**

180.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

181.    Plaintiff seeks certification of a multi-state Class in states that have adopted §402A of the Restatement of Torts 2d. as the common law of that state, or to the extent the Court determines that California and all other states have a materially different interpretation of §402A of the Restatement of Torts 2d., on behalf of the California Class only.

182.    Defendant's Class Vehicles were and are defective and unreasonably dangerous for the intended use in its design and/or manufacture by virtue of the Defect.

COMPLAINT

a.      The failure to include adequate and proper warnings or instructions regarding the dangers associated with the operation and use of the Class Vehicles.

183.   Defendant was under a duty to recall its defective product in light of its known dangers.

184.   Defendant was under a duty to warn Plaintiff and Class members of the Class Vehicles of the potential dangers or risks resulting from the use and operation of the Class Vehicles.

185.   Defendant breached its duty to recall the defective product.

186.   Defendant breached its duty to warn Plaintiff and Class members of the Class Vehicles of the risks resulting from the use and operation of the Class Vehicles.

187.   Defendant's failure to recall or to warn Plaintiff and Class member was a direct and proximate cause of Plaintiff's and Class members' injuries and losses as set forth previously herein and Defendant is strictly liable for such injuries and losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class and, where applicable, the Sub-Classes, prays for judgment against Defendant granting the following relief:

a.      An order certifying this case as a class action and appointing Plaintiff's counsel to represent the Class and, in the alternative, the Sub-Classes;

b.      Restitution and disgorgement of all amounts obtained by Defendant as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.      All recoverable compensatory and other damages sustained by Plaintiff and the Class and Sub-Classes;

d.      Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and Sub-Classes in the maximum amount permitted by applicable law;

e.    An order (1) requiring Defendant to immediately cease their wrongful conduct as set forth above; (2) enjoining Defendant from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective notice campaign; and (4) requiring Defendant to refund to Plaintiff and all members of the Class the funds paid to Defendant for repairs to defective Vehicles;

f.    Statutory pre-judgment and post-judgment interest on any amounts;

g.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

h.    Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

188.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  April 25, 2024                **THE LAW OFFICES OF LEON OZERAN**


                                      By:    */s/ Leon Ozeran*
                                             LEON OZERAN

                                             Attorney for Plaintiff
                                             SAMAN KOHANOF

COMPLAINT